Filed 6/18/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TALLEY AMUSEMENTS, INC. et al., | |
| Plaintiffs and Appellants, | G062646 |
| v. | (Super. Ct. No. 30-2022-01264282) |
| THE 32nd DISTRICT AGRICULTURAL ASSOCIATION et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from an order of the Superior Court of Orange County, Deborah Servino, Judge.  Affirmed.

Freeman Mathis & Gary, John S. Moot and Christian E. Foy Nagy for Plaintiffs and Appellants.

Rob Bonta, Attorney General, Tamar Pachter, Assistant Attorney General, Brian D. Wesley and Hutchison B. Meltzer, Deputy Attorneys General, for Defendant and Respondent 32nd District Agricultural Association.

Rutan & Tucker, Ira G. Rivin, Robert O. Owen, and Gerard M. Mooney for Defendant and Respondent Ray Cammack Shows, Inc.

\*          \*          \*

Public Contract Code[1] section 10339 prohibits a state agency from drafting a request for proposal on a public contract for services to be rendered to the state in a way that directly or indirectly limits bidding to any one bidder. Section 10421 allows a court to issue a temporary injunction preventing further dealings on a public contract awarded in violation of section 10339.

This is an appeal from an order denying a motion for temporary injunction under section 10421. The case involves allegations that the district agricultural association for Orange County violated section 10339 when it solicited proposals for a master carnival operator contract to run the midways at the county fair because the request for proposal (RFP) was written so that only one carnival operator in the United States (the same one that had operated the fair midways for the preceding two decades) could qualify. The trial court found section 10339 does not apply to this particular contract and denied injunctive relief under section 10421.

The issue on appeal is a matter of first impression: do the competitive bidding requirements of section 10339 apply to a district agricultural association's RFP on a master carnival contract? After considering the matter de novo, we hold that section 10339 does not apply to the contract at issue here because it is not a contract for services to be rendered to the state. We therefore affirm the trial court's order denying injunctive relief under section 10421.

---

[1]     All statutory references are to the Public Contract Code unless otherwise specified.

2

## FACTS

California is divided into numerous agricultural associations. (See Food & Agr. Code, §§ 3851-3904, 3951.) These associations are "state institution[s]," and their purpose is to "[h]old[ ] fairs, expositions and exhibitions" and to "[c]onstruct[ ], maintain[ ], and operat[e] recreational and cultural facilities of general public interest." (*Id*., §§ 3953, 3951.)

Defendant 32nd District Agricultural Association (the Association), which is the agricultural district for Orange County, operates the County Fair of Orange County (OC Fair). (Food & Agr. Code, §§ 3884, 3951.) This event is held every July and August at the Orange County Fairgrounds and welcomes over a million visitors during its 23-day run.

For more than twenty years, the Association contracted with defendant Ray Cammack Shows (Ray Cammack) to provide and run the OC Fair's midways, which is where the Ferris wheels, roller coasters and other rides, carnival games, and food concessions are located. Ray Cammack is one of the largest carnival operators in North America and for many years has operated the carnival midways for the OC Fair, the Los Angeles County Fair, the Arizona State Fair, and the Houston Livestock Show and Rodeo.

In October 2021, the Association issued Request For Proposal No. C-02-21 (OC RFP 21) to solicit proposals for a master carnival operator contract for the OC Fair's midways. This was the first RFP the Association had issued for operating the midways in over two decades.

OC RFP 21 explained that each bidder's experience and qualifications would be evaluated using a scoring process. The bidder with the highest total score would be awarded the contract.

In describing the scope of work, OC RFP 21 required the "[c]ontractor [to] provide a fully operational carnival including no less than approximately 65 quality rides

3

(one of which must be a Sky Ride, which will utilize the existing infrastructure), approximately 50 games, and approximately 25 food concessions." OC RFP 21 also required the use of "an electronic ticketing and redemption system for rides and games, an app to support advance carnival tickets sales, and on-site sales."

Under the section entitled "Minimum Experience and Qualifications," OC RFP 21 specified the contractor must have held master carnival contracts for three different fairs with attendance of over 500,000 at each during the past three years, and further that the contractor must have held master contracts utilizing an electronic ticket/redemption system for rides and games at such fairs. According to the OC Fair and Event Center's general manager, who assisted with reviewing OC RFP 21, these requirements were included to ensure the winning bidder would be able to service a large fair like the OC Fair and to provide the best possible experience for the public.

OC RFP 21 specified the contract term was to be for five years, with a five-year option to renew. The estimated gross revenue for the contract was $16 million per year for rides and games, or $80 million over five years; this figure did not include revenue from concessions. OC RFP 21 required the contractor to pay a percentage of the revenues generated from its operation of the rides and games to the Association.

Ray Cammack was the only carnival operator to submit a proposal in response to OC RFP 21. Although another carnival operator, plaintiff Talley Amusements, Inc. (Talley), received and considered OC RFP 21, it elected not to submit a proposal, believing it lacked the requisite experience with electronic ticketing systems.[2]

Talley instead wrote to the Association's board, asserting OC RFP 21 was invalid and should be reissued. Talley argued the digital ticketing requirement meant

---

[2] Ray Cammack and the Association contend OC RFP 21's minimum experience requirements were not disqualifying, accounted for only a small portion of the score for determining a winning bidder, and did not preclude Talley from submitting a proposal.

only a single carnival operator in the country (Ray Cammack) met the minimum requirements, and OC RFP 21 was drafted to either directly or indirectly permit only a single bidder to meet the minimum qualifications in violation of section 10339.

The Association awarded the job to Ray Cammack and entered into a five-year contract with Ray Cammack for operation of the carnival midways at the OC Fair. The midways at the 2022 OC Fair generated total revenues of over $27 million, of which Ray Cammack paid more than $8.7 million to the Association. According to Ray Cammack and the Association, the midways at the 2023 OC Fair also generated millions of dollars in revenue for the Association.

Talley[3] filed a verified complaint against the Association and Ray Cammack in Orange County Superior Court, alleging claims for: (1) violation of section 10339's competitive bidding requirements; (2) an injunction under section 10421; (3) disgorgement of all funds paid to Ray Cammack; and (4) declaratory relief that the contract awarded to Ray Cammack is void. Talley alleged that if OC RFP 21 had been withdrawn and reissued, Talley would have been able to bid on the amended RFP and would have offered "more generous financial terms" than what Ray Cammack offered, making the Association "considerably more money"; and that in failing to withdraw and reissue the RFP, the Association failed to act in the best interests of itself and the public.

After the parties conducted some initial discovery, Talley filed a motion for preliminary injunction under section 10421. Talley asserted OC RFP 21 was written in such a manner that only one carnival operator in the entire United States (Ray Cammack) could qualify; it therefore violated the competitive bidding requirements of section 10339, and section 10421 authorized the court to prevent further dealings under the contract.

---

[3] Other plaintiffs include Talley's owners, Thomas and Mary Talley, as well as Shawnee Merten, a taxpayer and resident of Orange County.

The trial court denied Talley's motion, finding OC RFP 21 was not subject to section 10339's competitive bidding requirements, and Talley therefore had not demonstrated a likelihood of success on the merits so as to be entitled to preliminary injunctive relief.[4] Talley filed a notice of appeal from that order.

**DISCUSSION**

Talley's appeal presents an issue of first impression: do the competitive bidding requirements of section 10339 apply to a district agricultural association's request for proposals on a master carnival contract? "Because this contention requires us to determine whether a statutory standard applies to a particular type of contract, it presents a question of law that we determine independently." (*Arnold v. California Exposition and State Fair* (2004) 125 Cal.App.4th 498, 505 (*Arnold*); see *Midway Venture LLC v. County of San Diego* (2021) 60 Cal.App.5th 58, 76 [although appellate courts ordinarily review trial court's evaluation of likelihood of prevailing on the merits for abuse of discretion, review is de novo if likelihood of prevailing depends on a pure question of law].) After reviewing the matter de novo, we conclude section 10339 is inapplicable here.

We begin with the rules governing district agricultural association contracts. Food and Agriculture Code section 4051 allows a district agricultural association to "[c]ontract, in accordance with all of the following: [¶] (A) The written policies and procedures for contracting that are developed and maintained by the board of directors of the association in accordance with this section. [¶] (B) All applicable state

---

[4] See *Butt v. State of California* (1992) 4 Cal.4th 668, 677–678 ("In deciding whether to issue a preliminary injunction, a court must weigh two 'interrelated' factors: (1) the likelihood that the moving party will ultimately prevail on the merits and (2) the relative interim harm to the parties from issuance or nonissuance of the injunction").

laws governing contracts, except [certain grants and contracts not at issue here are not subject to certain portions of the Public Contract Code[5]].” (*Id.*, subd. (a)(1).)

Because the Association is required to contract “in accordance with” “[a]ll applicable state laws governing contracts” (Food & Agr. Code, § 4051, subd. (a)(1)(B)), Talley maintains OC RFP 21 was subject to Public Contract Code section 10339’s competitive bidding requirements. The Association and Ray Cammack counter that section 10339 is not applicable to this particular contract.

Section 10339 appears in Article 4 of Chapter 2 of Part 2 of Division 2 of the Public Contract Code (Article 4), which governs state contracts for services. (See §§ 10335-10381.) The first provision in Article 4 specifies that the article applies “to all contracts, including amendments, entered into by any state agency for services to be rendered to the state.” (*Id.*, § 10335, subd. (a).)

We must therefore determine whether the contract contemplated by OC RFP 21 is a contract “for services to be rendered to the state.” Giving that phrase an ordinary and commonsense meaning, as we must (*Niedermeier v. FCA US LLC* (2024) 15 Cal.5th 792, 804), we conclude it is not.

OC RFP 21 required the winning bidder to provide a service (i.e., operating the midways) to fair patrons, not to the Association or the state. OC RFP 21 did not require the Association or the state to pay the winning bidder for any services; rather, it required fair patrons to pay the winning bidder for services rendered to them, and it

---

5    Food and Agriculture Code section 4051, subdivision (a)(1)(B), carves out two exceptions to the requirement that district agricultural associations contract in accordance with state laws on contracts: “(i) A grant or contract entered into by an association for goods is not subject to Chapter 2 (commencing with Section 10290) of Part 2 of Division 2 of the Public Contract Code,” and “(ii) A grant or contract entered into by an association is not subject to Chapter 3 (commencing with Section 12100) of Part 2 of Division 2 of the Public Contract Code.” Neither of those exceptions applies here. The first exception applies to contracts for goods, and the second applies to contracts for information technology.

required the winning bidder to pay a percentage of those revenues to the Association. The master carnival operator contract contemplated by OC RFP 21 is therefore not a contract "for services to be rendered to the state," so it is not subject to the competitive bidding requirements of section 10339.[6]

*Arnold,* though not binding, is instructive. The issue there was whether a contract issued by the California Exposition and State Fair (Cal Expo) to a harness race operator was a "state services" contract subject to Article 4's competitive bidding requirements. (*Arnold, supra,* 125 Cal.App.4th at p. 506.) The Third District Court of Appeal concluded it was not.

The court reasoned that in a typical goods or services contract, "California buys goods or services from a third party, or contracts for the third party to provide goods or services that California is obligated to provide, and California then pays the third party for those goods or services." (*Arnold, supra,* 125 Cal.App.4th. at p. 506.) The harness racing contract at issue in *Arnold* involved a contractor "using Cal Expo's harness racing facilities *and paying Cal Expo* for that use, rather than the other way around," and was thus more akin to a lease agreement. (*Ibid.*) Because the contract involved "a commercial business operator using certain state facilities to generate revenue," it was "not a public services contract subject to competitive bidding" under Article 4. (*Id.* at pp. 506-507.)[7]

The same distinction can be made in this case. The contract contemplated by OC RFP 21 called for the successful bidder to operate the OC Fair midways,

---

[6]   We reach this holding by giving sections 10335 and 10339 an ordinary and commonsense meaning. If the Legislature intends a different result, we invite it to revisit and clarify the language of the Public Contracts Code.

[7]   We recognize the *Arnold* court also relied on certain statutory, decisional, and administrative law that is not applicable here. (See *Arnold, supra,* 125 Cal.App.4th at pp. 506-507.) We nonetheless find the remainder of the court's reasoning persuasive.

8

independent of the Association, and to pay the Association for that use. It did not call for the Association to use public funds to pay the successful bidder for any service.[8]

Our analysis does end there, however. Food and Agriculture Code section 4051 also requires the Association to contract in accordance with its own written policies and procedures. (*Id.*, subd. (a)(1)(A).) Citing that requirement, Talley contends that the Department of Food & Agriculture's Contract Manual for District Agricultural Associations (rev. 2010) (the Contracts Manual) requires competitive bidding for carnival contracts.

In "Chapter 2: Competitive Bidding Requirements," in the section entitled "Bidding Requirements (PCC §10335)," the Contracts Manual states "[t]here is no legal requirement to bid rental agreements, *except* for carnival contracts (see Part 2.20)." (Italics added.) Part 2.20 in turn provides: "Although DAA carnival contracts are considered rental agreements, they must be bid. There are two types of bid packages for carnivals: (1) Two-Tier and (2) High Score." Part 6.00 repeats that requirement. Although the Contracts Manual allows for noncompetitive bidding in some circumstances, those provisions do not apply here.

According to Talley, since the Contracts Manual requires the Association to competitively bid its master carnival contract, a competitive bidding process that results in there being only one eligible bidder is invalid and should be enjoined under section 10421. We disagree.

The Contracts Manual repeatedly characterizes carnival contracts as "rental agreements," which supports our conclusion that OC RFP 21 does not involve a contract

---

[8] Cf. *Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.* (2017) 2 Cal.5th 505, 521 ("the competitive bidding laws were enacted for the benefit of the public, ""not for the benefit or enrichment of bidders, and should be so construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest"""").

for "services" subject to Article 4. And even if the Contracts Manual requires the Association to entertain competitive bids for the carnival contract, that does not automatically mean the Association is subject to the remedies listed in section 10421. Indeed, as the trial court noted, the Contracts Manual never references that provision, nor does it reference Article 9 in which section 10421 appears. Because Talley's motion for preliminary injunction was brought solely under section 10421, we find no error in the denial of that motion.

## DISPOSITION

The trial court's order denying Talley's motion for preliminary injunction is affirmed. Respondents shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

GOETHALS, ACTING P. J.

WE CONCUR:

DELANEY, J.

GOODING, J.

10